**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

PRINCETON WOMEN'S CENTER,
DR. ALLEN KLINE and MELISSA
SHACHNOVITZ,

    Plaintiffs,

v.

PROSELECT INSURANCE COMPANY,

    Defendant.

Civil Action No.: 11-1761(FLW)

**OPINION**

**WOLFSON, United States District Judge:**

    This is the Court's consideration of defendant ProSelect Insurance Company's ("Defendant" or "ProSelect") motion to dismiss the declaratory judgment action brought by plaintiffs Princeton Women's Center ("PWC"), Dr. Allen Kline, and Melissa Shachnovitz (collectively, "Plaintiffs"). The instant insurance coverage action arises from an underlying state court suit filed against Plaintiffs for the alleged unauthorized release of patient medical records. Plaintiffs seek a declaratory judgment that the medical professional liability insurance policy (hereafter, the "Policy")[1] procured from ProSelect provides indemnification and defense for each plaintiff in connection with the underlying action. In response, ProSelect moves to dismiss the action and contends that the Policy unambiguously excludes coverage for the underlying claims against PWC and Ms. Shachnovitz. For the reasons stated below, Defendant's motion to dismiss is **GRANTED in part and DENIED in part**.

---

[1] As the Policy, attached as Exhibit B to the Certification of David D'Aloia, Esq., is comprised of separate forms and endorsements and it does not provide consistent page numbers, for reference, the Court will refer to the aggregate document as "the Policy", with pages renumbered accordingly.

1

I.  **BACKGROUND AND FACTS**

The following facts are undisputed by the parties unless noted otherwise. From July 1, 2009 to July 1, 2010, Dr. Kline was insured under a medical professional liability policy issued by ProSelect. See The Policy, p. 1. At the time the Policy was executed, Dr. Kline was the sole owner of PWC, as well as a primary medical practitioner therein. See Underlying Complaint at ¶ 7. Ms. Shachnovitz was employed as the office administrator for PWC at that time. Id at ¶ 9. The Policy provides up to $1,000,000 in professional liability coverage per claim and up to $3,000,000 in aggregate coverage, for individuals insured according to its terms. See The Policy, p. 1. The Policy contains a number of provisions that outline and define the insured parties and limit the coverage available to them.  These provisions, of particular importance, are set out as follows:

> II. Definition of Insured
>
> > (1) The NAMED INSURED as listed in the DECLARATIONS.
> >
> > (2) The NAMED INSURED's employees, students, and volunteers (except an intern, resident, fellow, dental, osteopathic, or medical doctor), but only while such persons are acting within the capacity of their duties as such for the NAMED INSURED.
> >
> > (5) A professional medical corporation owned solely by the NAMED INSURED, but only if the corporation does not own, operate, or manage any laboratory, hospital, long term care facility, or any other healthcare facility or business enterprise other than the NAMED INSURED's medical office practice.
>
> VII. Other Definitions
>
> > (4) DECLARATIONS means the section of this POLICY titled "DECLARATIONS" that sets forth certain important information about the NAMED INSURED and this POLICY.
> >
> > (8) NAMED INSURED means the INSURED designated in the DECLARATIONS.

    IX. GENERAL CONDITIONS

        (3)    Authority of the Named Insured.  The NAMED INSURED is authorized to act on behalf of all INSUREDS with respect to acceptance of this POLICY and any endorsements, the giving or receiving of notice of cancellation, receiving unearned premium or dividends and agreeing to any changes in this POLICY.

        (6)    Changes. Notice to any agent or knowledge possessed by any agent or other person acting on OUR behalf will not effect a waiver or change to any terms or conditions of this POLICY or estop US from asserting any right under the terms and conditions of this POLICY.  The terms and conditions of this POLICY can be waived or changed only by written endorsement signed by US.

See The Policy, p. 8, 16-18.

Several endorsements are appended to the Policy. Where the first two endorsements appear to be standard for all medical professionals insured by ProSelect in New Jersey, the third was specifically negotiated and entered into by the parties. See The Policy, p. 2, 3, 5. The relevant endorsement (hereafter, the "Change Endorsement") reads: "In consideration of premium charged it is hereby understood and agreed that Princeton Women's Center, PC … has been added." See The Policy, p. 5.

On March 22, 2010, Dr. Kusum Punjabi, a patient of PWC, filed suit against Plaintiffs in this matter in the New Jersey Superior Court, Mercer County.  See Underlying Complaint, p. 1. Dr. Punjabi alleged violations of the Health Insurance Portability and Accountability Act ("HIPPA") of 1996 by means of an alleged unauthorized release of medical records. Id at p. 3-4. Specifically, Dr. Punjabi contends that Ms. Shachnovitz released Dr. Punjabi's medical records to her estranged fiancée without her consent or proper HIPAA authorization. Id at p. 4.

On April 29, 2010, ProSelect disclaimed coverage of those claims filed against PWC and Ms. Shachnovitz in the underlying state action, pursuant to Exclusion 15 in the Policy.  See DJ

3

Compl. at ¶ 5.  Exclusion No. 15, titled "Unauthorized Disclosure of Information", explicitly precludes claims:

> Arising out of unauthorized use or disclosure of information contained in an INSURED'S computer or data processing systems or of any medical records, financial information or other patient information of any person.  This exclusion does not apply to the liability of the NAMED INSURED.

See the Policy, p. 16.  In that regard, according to ProSelect, because PWC and Ms. Shachnovitz are "Insureds" under the Policy, they were not entitled to coverage.  However, ProSelect agreed to provide a defense to all claims against Dr. Kline, the "Name Insured" under the Policy, subject to a reservation of rights.  ProSelect later withdrew this reservation and is providing Dr. Kline with an unconditional defense and indemnity.[2]

On June 3, 2010, Plaintiffs sent a letter to ProSelect reasserting their belief that PWC and Ms. Shachnovitz were entitled to coverage under the Policy. See DJ Complaint at ¶¶ 9, 10. They reasoned that "ambiguous" distinctions in the Policy between "Named Insureds" and "Insureds" should entitle both PWC and Ms. Shachnovitz to coverage as "Named Insureds." See DJ Complaint at ¶ 10.  On February 22, 2011, Plaintiffs filed the instant action in state court seeking a declaratory judgment of liability coverage for each plaintiff.  On March 28, 2011, Defendant removed the case to this Court invoking the Court's diversity jurisdiction. Subsequently, Defendant filed the instant motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] As Dr. Kline does not have any additional claims in this Complaint independent of the declaratory judgment, the Court focuses here on the claims brought by plaintiffs PWC and Ms. Shachnovitz for the purposes of this motion.

## II.     DISCUSSION

### A.     Removal to Federal Court

Plaintiffs first filed this declaratory judgment action in the Superior Court of New Jersey, Law Division, Mercer County. See DJ Complaint, p. 1. Thereafter, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. See Notice of Removal, p. 1. In their opposition to Defendant's motion to dismiss, Plaintiffs contest the propriety of the removal. See Plaintiffs' Opp. at p. 4.  Plaintiffs argue that the Court lacks diversity jurisdiction because ProSelect, an insurance company, should be deemed a New Jersey corporation pursuant to 28 U.S.C. § 1332. Id. at p. 4. Notwithstanding the fact that Plaintiffs have failed to observe the proper procedures for opposing a removal, on the merits, Plaintiffs' challenge is misplaced.

Under 28 U.S.C. § 1441(a), a state-court action that could be properly filed in federal court may be removed by the defendant to federal court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441). When an action has been improperly removed, the matter may be remanded to the state court from which it came pursuant 28 U.S.C. § 1447(c). Federal courts have jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  Here, Plaintiff does not dispute the amount in controversy, but rather, the citizenship of Defendant. See Plaintiffs' Opp. at p. 4.

The citizenship of a corporate entity is determined pursuant to 28 U.S.C. § 1332(c).  In the insurance liability context, the section provides that "in any 'direct action' against an insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen . . . . ." 28 U.S.C. § 1332(c)(1).  The Supreme Court has

recently explained that "a true direct action suit is a lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured." Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195, 2200 n.2 (2009) (quotations and citation omitted).

Based upon that definition, Plaintiffs clearly mischaracterize the instant suit as a "direct action" under 28 U.S.C. § 1332(c)(1), in an attempt to defeat diversity. Indeed, a lawsuit brought by an insured against the insurer is not a "direct action" as contemplated by 28 U.S.C. § 1332(c)(1), because the insurer's status is not that of a "payor of a judgment based on the negligence of one of its insureds." Myers v. State Farm Ins. Co., 842 F.2d 705, 707 (3d Cir. 1988) (citation and internal quotation marks omitted). In the instant case, Plaintiffs have filed suit against ProSelect seeking coverage, as insureds against their insurer. Therefore, this action does not qualify as a "direct action" under 28 U.S.C. § 1332(c)(1). As such, ProSelect is deemed a citizen of Massachusetts, its state of incorporation. Plaintiffs are recognized citizens of New Jersey; in that regard, the parties are diverse and this Court is satisfied that Defendant's removal was proper.

**B.     Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 U.S. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir.2004).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, --- F.3d ----, 2010 WL 4840093, *8 (3d Cir., Nov. 29, 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. at *7 (quoting Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1953, (2009)).

C.      **Insurance Contracts Generally**

As a generally matter, in New Jersey, special scrutiny is given to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies. Gibson v. Callaghan, 158 N.J. 662, 669 (1999). In the first instance, when interpreting an insurance policy, courts should afford the policy's words their plain, ordinary meaning. Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110 (2005) (internal citations and quotation marks omitted); see Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc., No. 10-3833, 2011 U.S. App. LEXIS 15894, at *14 (3d Cir. Aug. 3, 2011). In that connection, courts "interpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties." Ill. Nat'l Ins., 2011 U.S. App. LEXIS 15894 at *14 (citing Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95 (2009)). "In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." Gibson, 158 N.J. at 670 (quotation and citation omitted).

However, insurance policies are contracts of adhesion and as such, are subject to special rules of interpretation. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990); Meier v. N.J. Life Ins. Co., 101 N.J. 597, 611-12 (1986). When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning. Gibson, 158 N.J. at 671. "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338-39 (1985) (internal quotations and citation omitted).

Here, both parties rely solely upon a reading of the Policy to support their respective positions. Defendant argues that the unambiguous language precludes coverage for the underlying claims against PWC and Ms. Shachnovitz because they are only considered "Insureds" under the Policy. See Defendant's Reply at p. 3. On the other hand, Plaintiffs submit that the Change Endorsement modified the Policy and creates an ambiguity that should warrant coverage to each Plaintiff as a "Named Insured". See Plaintiffs' Opp. at p. 5-6. The Court will assess the claims brought by PWC and Ms. Shachnovitz separately, in turn.

    **i. Princeton Women's Center (PWC)**

In order to prevent dismissal, a complaint must present a facially plausible claim. The purpose of the instant motion is to test the sufficiency of the complaint, and assess whether Plaintiffs are entitled to offer evidence in support of their claim. Kost, 1 F.3d at 183; Twombly, 550 U.S. at 563 n. 8. Under the Twombly/Iqbal paradigm, the Court must first determine whether Plaintiffs have averred sufficient factual allegations that state plausible grounds for relief. Here, the plausibility requirement is satisfied if Plaintiffs' pleadings are sufficient for the

9

Court to draw the reasonable inference that ProSelect is responsible for defending and indemnifying Plaintiffs in the underlying action. In that respect, when viewing the Complaint under these strictures, the Court finds that the allegations supporting PWC's claim are sufficient.

>   Plaintiffs' Complaint is based, in relevant part, on the following crucial allegations:
>
>   8. The policy contains no provision that provides any distinction between a "Named Insured" and an "Insured".
>
>   9. By letter dated June 3, 2010, defendant was put on notice of plaintiffs' position as to the coverage issue.
>
>   10. In pertinent part, the June 3, 2010 letter advised defendant that the disclaimer was made pursuant to, at best, an ambiguous distinction in the policy for which, pursuant to New Jersey case law, deference should be given to the insured and coverage provided.
>
>   12. Defendant's position as to coverage was improper.

See DJ Complaint at ¶¶ 8, 9, 10, 12. The Complaint goes on to allege that the Policy entitled PWC to coverage on par with the "Named Insured" on the Policy. See DJ Complaint, p. 3. A copy of the Policy provided to the Court confirms that it provides for the defense and indemnification of all "Named Insureds", but designates only Dr. Kline as a "Named Insured." See The Policy, p. 1. However, the Policy also includes a "Change Endorsement," adding PWC to the Policy without any indication as to its status as an "INSURED" or "NAMED INSURED". See The Policy, p. 5.

Utilizing the definition of "Named Insured," Defendant reasons that a plain reading of the Policy language compels a finding that PWC is not a "Named Insured" as it does not appear on the Declaration page. In so arguing, Defendant relies on case law which explains that the term "Named Insured" is self-defining in an insurance policy, and such definition refers only to the names appearing in the declaration page. See Defendant's Supp at p. 13 (citing Botti v. CAN Ins. Co., 361 N.J. Super 217, 226 (App. Div. 2003)). While accurate, this proposition is not

dispositive of the issues in this case. The question here is not whether a named insured must appear on the Declarations page -- that is not disputed by the parties. Rather, distilled to its essence, the dispute is whether, when the Policy is read in whole, the Change Endorsement modified the Policy so as to include PWC to the Declaration page as a "Named Insured." Undoubtedly, pursuant to the Policy, Section II, PWC was already qualified as an "Insured" under the contract because it is a professional medical corporation owned solely by Dr. Kline. See The Policy, p. 8. Accordingly, it can be reasonably inferred that the purpose of the Change Endorsement was to, in some manner, alter or augment PWC's status under the standard policy. A plain reading of the Change Endorsement certainly supports such an interpretation. First, the Endorsement provides that an additional premium was paid by Plaintiffs to specifically add PWC to the Policy. In addition, according to its terms, the Endorsement does not "vary, alter, waive or extend any of the items, conditions, provisions, agreement or limitations of the . . . Policy, other than as [] stated" in the endorsement. See The Policy, p. 5. This language could be taken to indicate that the purpose of adding PWC to the Policy was to effectively provide PWC the same status as held by Dr. Kline, particularly since Dr. Kline is specifically designated as an "Insured" on the Change Endorsement itself and no differentiation between "Named Insured" and "Insured" was made thereon. Id.

While, on this motion, Defendant never expressly reveals to the Court the purpose of the Change Endorsement, its stance on the effect of the endorsement remains that it did not alter PWC's coverage as an "Insured." However, to accept Defendant's interpretation would necessarily render the Change Endorsement superfluous and require this Court to violate a basic tenet of contract interpretation. See Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super 484, 497 (App. Div.), cert. denied, 177 N.J. 222 (2003) (A logical

interpretation of the instruction, like a logical interpretation of a statute or contract, is one that does not render language superfluous, or meaningless); see also Penske Logistics, Inc. v. KLLM, Inc., 285 F. Supp. 2d 468, 474 (D.N.J. 2003) ("Under the principles of contract interpretation, a contract should not be given an interpretation which renders a term or terms superfluous or meaningless.") (citing 11 Williston on Contracts, § 32:11(4th ed. 1999)).  Therefore, this Court finds that Plaintiffs sufficiently allege a facially plausible claim -- in that, PWC is entitled to coverage under the Policy by virtue of the integration of the Change Endorsement drafted by ProSelect. Accordingly, Defendant's motion to dismiss PWC's claim is **DENIED**.

### ii. Melissa Shachnovitz

In praying for equal relief, Ms. Schachnovitz suggests that she is entitled to coverage on par with the coverage afforded to "Named Insureds" under the Policy. See DJ Complaint, p. 3. She maintains that the ambiguity in the Policy drafted by ProSelect, namely, the inclusion of the Change Endorsement, would require ProSelect to cover to both PWC and Ms. Shachnovitz. See Plaintiffs' Opp. at p. 5-6. The Court finds that proposition untenable.  It is axiomatic that "if the policy language is clear, the policy should be interpreted as written". Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 118 (2005) (citing President v. Jenkins, 180 N.J. 550, 562 (2004)).  Here, there can be no ambiguity as to Ms. Shachnovitz's coverage under the Policy. In her role as Office Administrator for PWC, Ms. Shachnovitz is qualified solely as an "Insured," as defined under Section II of the Policy. See The Policy, p. 8. Irrespective of whether she is employed by Dr. Kline personally, or by PWC at his behest as argued by Plaintiffs, Ms. Shachnovitz is considered only as an "employee" under either party pursuant to the terms of the Policy.

Furthermore, the Change Endorsement has no effect on Ms. Shachnovitz's coverage because it clearly does not pertain to her. See The Policy, p. 5. Nor would a change of PWC to

"Named Insured" elevate Ms. Shachnovitz's status as an employee. Accordingly, Ms. Shachnovitz is entitled only to the coverage available to all "Insured" parties under the Policy and nothing more. And, under Exclusion 15, as an Insured, ProSelect simply does not owe Ms. Shachnovitz any coverage with respect to the underlying state action. Accordingly, Defendant's motion to dismiss Ms. Shachnovitz's claims is **GRANTED**.

### III. CONCLUSION

For those reasons, Defendant's motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is **GRANTED in part and DENIED in part** as follows: (1) Ms. Shachnovitz fails to state a claim upon which relief can be granted and therefore, her claims are **DISMISSED**; and (2) Defendant's motion to dismiss PWC's claims is **DENIED**.


DATE:  October 14, 2011                                    /s/ Freda L. Wolfson
                                                           Freda L. Wolfson, U.S.D.J.